UNITED STATES of America,
Appellee,

v.

Brent BOYD, Agnes Cartmell, aka Bea Cartmell, Mark Boyd, aka Joe Prescott, Albert McAmmond, aka Albert Adams, David Beckler, aka David Edwards, George Maziotis, aka Martin Brook, Robert Ross, aka Robert Stevens, Herve Sourati, aka Brian Sinclair, Defendants,

Claire Peck, aka Cathy Jackson,
Defendant–Appellant.

Docket No. 99–1500

United States Court of Appeals,
Second Circuit.

Argued: March 21, 2000

Decided: Aug. 09, 2000

Gregory L. Waples, Assistant United States Attorney (Charles R. Tetzlaff, United States Attorney for the District of Vermont on the brief), for Appellee.

Maryanne E. Kampmann, Stetler, Allen & Kampmann, Burlington, VT, for Defendant–Appellant.

Before: FEINBERG, JACOBS, HALL,* Circuit Judges.

PER CURIAM.

Defendant-appellant Claire Peck was tried by a jury in the United States District Court for the District of Vermont (Sessions, J.) on charges arising out of her employment as a salesperson for the Canadian Gemstone Association, which marketed gemstones by telephone. She was convicted on five counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of wire fraud in violation of 18 U.S.C. § 1343, and she was acquitted on one count of conspiracy, 18 U.S.C. § 371. Peck is currently serving concurrent 30–month terms of imprisonment, to be followed by three years of supervised release. The district court also ordered her to pay (jointly and severally with all co-defendants) restitution of more than $4,000,000.

On appeal, Ms. Peck raises numerous challenges to her conviction and sentence, most of which are rejected in an unpublished summary order also filed today. *See United States v. Boyd, et al.,* 223 F.3d 47 (2d Cir.2000). This opinion disposes of Peck's claims that the district court committed plain error: (1) by imposing restitution for damages suffered by victims of counts as to which she was acquitted; and (2) by calculating restitution on one basis (the harm done by the conspiracy as a whole) while calculating prison sentence on another (the damage suffered by Peck's particular customers).

We hold (1) that Peck's conviction implicates her as a co-conspirator, which under the applicable restitution statutes requires an order of restitution up to the full amount of the loss caused by the conspiracy as a whole; and (2) that because the sentence of imprisonment was reasonable under the Sentencing Guidelines and the restitution amount is reasonable under the restitution statutes, the purported inconsistency in calculating these provisions of the sentence was not plain error.

## BACKGROUND

We summarize here only the facts that bear upon the issues decided in this opinion. Because Peck appeals after a jury

---

* The Honorable Cynthia Holcomb Hall, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

trial, "our statement of the facts views the evidence in the light most favorable to the government, crediting any inferences that the jury might have drawn in its favor." *United States v. Salameh,* 152 F.3d 88, 107 n. 1 (2d Cir.1998) (per curiam).

Peck was employed as a salesperson for the Canadian Gemstone Association ("CGA"), a Canadian firm that sold gemstones over the telephone to Americans. CGA marketed the stones as investment-grade gems whose supply was controlled by a cartel in Colombia and whose value was therefore projected to increase substantially. The evidence at trial showed that Peck and the other employees at CGA made false statements and representations to induce customers to purchase and invest in gemstones at vastly inflated prices.

Between 1993 and 1996, hundreds of Americans paid more than $5 million for stones marketed by CGA.

In June 1997, a federal grand jury returned a 38–count indictment charging Peck and eight others with conspiracy, mail fraud and wire fraud. All defendants were charged in each count. Peck voluntarily surrendered to U.S. authorities in September 1997, pled not guilty on all charges, and went to trial in March 1998.

At the close of evidence, the district court charged the jury on one count of conspiracy, fifteen counts of mail fraud and one count of wire fraud. Although the evidence showed Peck to have personally sold gemstones to victims identified in only four of the mail fraud counts, the government urged the jury to apply a theory of co-conspirator liability and convict Peck on substantive counts relating to victims of the conspiracy with whom she had no personal dealings.

The jury convicted Peck on five counts of mail fraud and on the count of wire fraud. The jury acquitted Peck on the conspiracy count and on ten counts of mail fraud. The counts of conviction included the four mail fraud counts for which Peck personally sold gemstones, plus two counts—one mail fraud and one wire fraud—as to which Peck had no direct dealings with the identified victims. On these latter two counts, the jury necessarily convicted Peck on the theory of co-conspirator liability, under *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), as argued by the government at trial.

## DISCUSSION

### A. *Restitution*

■ Peck raised no objection, either in her sentencing memorandum or during the sentencing hearing, to paying full restitution. Our review is therefore limited to plain error. *See* Fed. R. Crim P. 52(b); *United States v. Helmsley,* 941 F.2d 71, 98 (2d Cir.1991) ("[I]f a defendant fails to object to certain information in the presentence report, she is barred from contesting the sentencing court's reliance on that information, unless such reliance was plain error."). Relief under the plain error standard requires a " 'clear' " or " 'obvious' " error that affects substantial rights. *See Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). There is no such error on this record.

### 1. *Restitution on Acquitted Counts*

■ The restitution order in this case is governed by overlapping provisions of (i) the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, and (ii) 18 U.S.C. § 2327, which provides for mandatory restitution in cases of telemarketing fraud. Together, these provisions require that "in *each* order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (emphasis added); *accord* 18 U.S.C. § 2327(b)(2) (adopting this definition in the

telemarketing restitution statute), § 2327(b)(4) (making full restitution mandatory in cases of telemarketing fraud).

"Victim" is broadly defined as any

person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2), *accord* § 2327(c) (adopting this definition in the telemarketing restitution statute). Where (as here) a conspiracy has multiple victims, the statutes allow the sentencing court to order a single defendant to pay restitution for all losses caused by the actions of that defendant as well as by the actions of that defendant's co-conspirators, or, in its discretion, to allocate restitution proportionately among culpable parties:

[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, *the court may make each defendant liable for payment of the full amount of restitution or* may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

Section 3664(h) (emphasis added).

The district court's findings on the subject of restitution are set forth in the margin.[1] Peck challenges specifically the finding that she "had sufficient knowledge of the operations [of the CGA] to require that she participate jointly and severally in the obligations to make restitution pay-

ments." On that basis, the court ordered Peck to make restitution for damages suffered by *all* the victims of the CGA, including victims named in counts as to which Peck was acquitted. Peck suggests that even in a conspiracy case, the MVRA provides for restitution based only on the conduct of the defendant, and not on the conduct of others.

■ We disagree. The MVRA definition of "victim" traces verbatim the amended language of the Victim Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, which courts have uniformly read to provide for restitution payable by all convicted co-conspirators in respect of damage suffered by all victims of a conspiracy, regardless of the facts underlying counts of conviction in individual prosecutions:

With [amendments to the VWPA], Congress broadened the scope of restitution from losses attributable solely to the offense of conviction to all losses caused in the course of a defendant's criminal conduct, *whether the defendant is convicted of each of those offenses or not.*

*United States v. Collins,* 209 F.3d 1, 3 (1st Cir.1999) (emphasis added) (citing *United States v. Hensley,* 91 F.3d 274, 276 (1st Cir.1996)); *see also United States v. Davis,* 117 F.3d 459 (11th Cir.1997)(not plain error to order restitution payments by each member in conspiracy based on the acts of all); *United States v. Lewis,* 104 F.3d 690, 693 (5th Cir.1996) (defendant responsible for entire amount of loss caused by conspiracy regardless of whether he personally participated in each illegal transaction); *United States v. Royal,* 100 F.3d 1019, 1032 (1st Cir.1996) (district court may order defendant to pay restitution for his own acts plus "any reasonably

---

1. In full, the court made the following findings with respect to restitution:

Restitution in this matter is a joint and several obligation with the co-defendants in this case. I recognize the fact that she was acquitted of the conspiracy count. On the other hand, I also recognize the fact, perhaps confused though it may be, that the jury concluded that she participated in the conspiracy for purposes of the *Pinkerton* counts, and as a result, the court specifically finds that she had sufficient knowledge of the operations to require that she participate jointly and severally in the obligations to make restitution payments.

foreseeable loss caused by his co-conspirators acting in furtherance of this conspiracy"); *United States v. Plumley,* 993 F.2d 1140, 1142 n. 2 (4th Cir.1993) (amendments do not "usurp[ ] the settled principle that a criminal defendant who participates in a conspiracy is liable in restitution for all losses flowing from that conspiracy"); *United States v. Chaney,* 964 F.2d 437, 451 (5th Cir.1992) (rejecting claim of defendant convicted of fraud that "restitution under the VWPA is forbidden for losses that may be attributed to conduct that is the basis of charges for which the defendant is acquitted").

It is therefore clear that the VWPA confers authority to order a participant in a conspiracy to pay restitution even on uncharged or acquitted counts, and it follows that the district court's restitution order in this case—made pursuant to the MVRA's identical text—was not plain error. *See, e.g., United States v. Alli–Balogun,* 72 F.3d 9, 12 (2d Cir.1995) ("We do not see how [there] can be plain error when the Supreme Court and this court have not spoken on the subject, and the authority in other circuits is split."). The jury necessarily found, beyond a reasonable doubt, that Peck was liable for substantive crimes committed by co-conspirators under *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), which subsumes the findings: that Peck was a member of the conspiracy; that her offense was committed pursuant to the common plan of the conspiracy; and that she could reasonably have foreseen that a co-conspirator would commit the substantive offense. It was not plain error for the district court to rely on *Pinkerton* liability to impose a restitution order making Peck liable for the reasonably foreseeable acts of all co-conspirators.

### 2. *Inconsistency between Sentencing and Restitution*

■ The inconsistency in sentencing identified by Peck is that in calculating restitution, the court evaluated the damage suffered by victims in terms of the conspiracy as a whole (including counts as to which Peck was acquitted), while in denying Peck's motion for a minimal-participant reduction in the term of imprisonment, the court evaluated her role in terms of the counts of conviction alone. In brief, she argues that if she is to answer financially for the losses caused by the whole conspiracy, she should be deemed a small cog in the big conspiracy for the purpose of gauging her role in the offense; and alternatively that if her role in the offense is to be gauged in terms of the several counts on which she was convicted, her restitution should be limited to the lesser loss caused by those offenses.

The summary order accompanying this opinion rejects Peck's challenge to the district court's calculation of the term of imprisonment. *See United States v. Boyd, et al.,* 222 F.3d 47 (2d Cir.2000). Here, we conclude that neither ruling is inconsistent with the authority on which it is based, and we therefore reject the claim that the inconsistency in sentencing that she identifies constitutes plain error. *See, e.g., Olano,* 507 U.S. at 732–35, 113 S.Ct. 1770 ("At a minimum, the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.").

The inconsistency in this case is arguably mandated by the statutes and Guidelines. The restitution statute applicable to members of a telemarketing conspiracy is mandatory and provides that every member of a conspiracy be liable for full restitution regardless of the role that each may have performed. *See* 18 U.S.C. § 2327(b)(4)(A). The minimal participant provision of the Sentencing Guidelines, *see* Guidelines § 3B1.2, is just as clear and provides for an accounting on a different basis: adjustment is available in "infrequent[ ]" and rare cases, *see id.* at Application Note 2, and *only* on the basis of the particular defendant's *individual* acts as they relate to the counts of conviction.

*See, e.g., United States v. Goodman,* 165 F.3d 169, 175 (2d Cir.1999) (focus is on defendant's "significant role in accomplishing her portion of the fraud," not on "the scope of defendant's activity [in relation to] that of other participants in fraudulent scheme."); *United States v. Ajmal,* 67 F.3d 12, 18 (2d Cir.1995) (same); *see also Collins,* 209 F.3d at 3 (rejecting a claim that full restitution is permissible only for defendants who "played major roles in their conspiracies").

The district court read the applicable law and took different factors into account in calculating Peck's term of imprisonment and the restitution order. We decline to say whether the court's approach amounts to an inconsistency; whether or not the two sentencing provisions are at cross-purposes depends in part on what their purposes are. Under plain error review, it is enough to decide that the sentencing court did not deviate from settled law in either of the two rulings. Error (if any) was therefore not "clear" or "obvious" under current law. We express no view as to whether the district court committed an error other than a plain error.

## CONCLUSION

For these reasons (and those provided in the summary order), the judgment of the district court is affirmed.